IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MON CHERI BRIDALS, LLC, and** § <br> **MAGGIE SOTTERO DESIGNS, LLC,** § <br> § <br> **Plaintiffs,** § <br> § <br> v. § <br> § <br> **CLOUDFLARE, INC., and DOES 1 – 500,** § <br> **inclusive,** § <br> § <br> **Defendants.** | **Misc. Case No.:** _____ <br><br> **Underlying Case:** <br> Case No. 3:19-cv-01356-VC <br> United States District Court for the <br> Northern District of California |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
DEFENDANT CLOUDFLARE, INC. TO COMPEL COMPLIANCE
BY XMLSHOP, LLC dba COUNTERFEIT TECHNOLOGY
WITH SUBPOENA**

Defendant Cloudflare, Inc. seeks an order under Federal Rule of Civil Procedure 45(d)(2)(B)(i), (g) compelling non-party XMLShop, LLC dba Counterfeit Technology to produce subpoenaed documents and finding it in contempt for failing to obey the subpoena without adequate excuse.[1]  XMLShop, LLC[2] is at the factual center of the litigation.  Plaintiffs and

---

[1] Venue is appropriate in this court because XMLShop is located in this district such that compliance with the subpoena at issue is required here.  *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.").

[2] XMLShop, LLC dba Counterfeit Technology appears to operate three business lines, as it explains at its website XMLLogistic.com.  From the beginning it has operated a drop-shipping company for retailers, assisting also in warehouse operations and providing shipping stations.  It then developed algorithms to track online users' behavior.  The third business line, at issue here, involves a technology that it claims to scrape materials from the Internet and to send copyright complaints.  *See* Declaration of Andrew P. Bridges in Support of Motion of Defendant Cloudflare, Inc. to Compel Compliance by XMLShop, LLC with Subpoena ("Bridges Decl.") ¶ 2, Ex. A.  The fictitious business name it used for purposes of this dispute, Counterfeit Technology, relates to the third business model.

XMLShop, who use the same counsel, appear to be using XMLShop's status strategically as a "non-party" to conceal relevant documents from Cloudflare. The Court should reject their gamesmanship. XLMShop has refused to provide documents in response to two different subpoenas Cloudflare served, finally producing only one document— and that, only after extensive efforts by Cloudflare's counsel to obtain compliance without a court order. For the reasons Cloudflare shows below, the Court should order XMLShop to produce all responsive documents in its possession, custody, or control immediately.

## FACTUAL BACKGROUND

### The Underlying Action

The underlying litigation in the Northern District of California is an unusual copyright case. Plaintiffs are wedding and prom dress vendors that allege copyright infringement by operators of websites that allegedly use Plaintiffs' photographs to sell knockoff dresses in competition with the Plaintiffs. Cloudflare is a technology company whose network is an important part of the Internet's infrastructure. Cloudflare provides a waypoint for transmission of approximately 10 percent of the Web's traffic, allowing it to provide security and related services to more than 27 million Internet properties. By handling traffic between its customers' websites and public users of the Internet, Cloudflare's system and network can detect signs of malicious traffic—such as distributed denial of service (DDoS) attacks and botnets that use malware to infect computers and networks to launch attacks—and block the traffic to thwart the attacks. While Cloudflare earns much of its revenue from major companies that seek its protection, including Panasonic, Mars, L'Oreal, Shopify, and 23andMe, Cloudflare also provides free services to millions of customers that operate smaller websites. The reason for providing free service to millions of websites is that every additional protected site or network contributes to the overall safety and security of the Internet by denying to malefactors the opportunity to launch attacks from them.

Plaintiffs sue Cloudflare for a windfall of statutory damages under copyright law because they allege that Cloudflare's network carries traffic of customers whom the Plaintiffs have accused of copyright infringement. Specifically, Plaintiffs claim that Cloudflare's provision of transmission, security, and performance services to customers accused of copyright infringement amounts to contributory copyright infringement by Cloudflare, making it responsible for its customers' actions. Declaration of Sapna Mehta in Support of Motion of Defendant Cloudflare, Inc. to Compel Compliance by XMLShop, LLC with Subpoena ("Mehta Decl.") ¶ 2, Ex. 1 (First Amended Complaint, *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, Case No. 2:18-cv-09453-MWF-AS (C.D. Cal. Feb. 6, 2019), Dkt. 28) ("FAC").

## The Central Factual Role and Relevance of XMLShop, LLC dba Counterfeit Technology

Plaintiffs used XMLShop, LLC dba Counterfeit Technology, the subpoenaed party, as their "authorized agent" to send copyright complaints to Cloudflare on their behalf. FAC ¶ 32. Plaintiffs claim that XMLShop "scours the internet with special bots designed to locate and identify" Plaintiffs' images. *Id.* Plaintiffs claim that an XMLShop representative named Armen Petrossian sent correspondence, supposedly notifications of claimed copyright infringement, to Cloudflare on their behalf. Along with describing its role in their operative pleading, Plaintiffs disclosed "Armen Petrossian, XML Shop LLC d/b/a Counterfeit Technology" as having discoverable information that Plaintiffs may use in the case. Mehta Decl. ¶ 3, Ex. 2. According to Plaintiffs' initial disclosures, he knows about more relevant topics than Plaintiffs' own executives: he "has knowledge generally concerning the allegations of the Complaint, including the ownership and registration of Plaintiffs' copyrights, the investigation of Cloudflare's infringement of those copyrights, and communications with, and notifications provided to,

Cloudflare concerning Plaintiffs' copyrighted images and the infringement of those copyrights." *Id.*

XMLShop has in other contexts identified Suren Ter-Saakov as the technological brains behind its operation, devising the technology on which XMLShop claims to rely in its detection and reporting of alleged infringements. XMLShop promotes its "anti-counterfeit technology" prominently at its Counterfeit Technology website. *See* Bridges Decl. ¶ 3, Ex. B. It describes it as "technology, invented by the team," to find, scrape, and *file complaints* with websites for allegedly stolen images. Bridges Decl. ¶ 2, Ex. A at 3 (emphasis added). Mr. Ter-Saakov and Mr. Petrossian have submitted sworn affidavits to other courts describing XMLShop's purported use of "sophisticated algorithms and detection models to identify counterfeit products offered for sale across the Internet." Bridges Decl. ¶¶ 7-11, Exs. F-I (Declaration of Suren Ter-Saakov, *ABPIA v. Chen*, Case No. 16-cv-00023 (N.D. Ill. Jan. 4, 2016), Dkt. 13 ¶ 3; Declaration of Suren Ter-Saakov, *ABPIA v. Jollyprom.com*, Case No. 17-cv-02454 (D.N.J. June 30, 2017), Dkt. 15-2 ¶¶ 1-2; Declaration of Armen Petrossian, *ABPIA v. Jollyprom.com*, Case No. 17-cv-02454 (D.N.J. July 14, 2017), Dkt. 25-4; Declaration of Suren Ter-Saakov, *Mori Lee, LLC v. The Partnerships*, Case No. 20-cv-07648 (N.D. Ill. Dec. 22, 2020), Dkt. 9-3). Mr. Ter-Saakov has filed declarations in other litigation by XMLShop's clients, including Plaintiff Mon Cheri Bridals, describing XMLShop's technology and activities, but Plaintiffs did *not* disclose him as a person with knowledge of the facts in this case. *See* Mehta Decl. ¶ 3, Ex. 2. Notably, Mr. Ter-Saakov figures in the single document that XMLShop produced in response to the subpoena, as Cloudflare mentions below.

Cloudflare is entitled to have a complete production of documents responsive to the subpoena because the information in XMLShop's possession, custody, or control is crucial to both Plaintiffs' claims and Cloudflare's defenses in the case.

**XMLShop's Failure to Comply with the Subpoenas**

XMLShop, which has relied upon Plaintiffs' counsel of record as its attorneys, has largely stonewalled the subpoenas despite its unique and central role in the facts of the case and its substantial assistance to Plaintiffs in this litigation. This discovery dispute concerns XMLShop's refusal to comply with a subpoena for documents—directing compliance within 30 miles of XMLShop's listed address in Trevose, in this district—before its deposition. Cloudflare first served a subpoena to produce documents on XMLShop in March 2020. Mehta Decl. ¶ 4, Ex. 3. XMLShop served blanket, boilerplate objections and produced no documents. Mehta Decl. ¶ 4, Ex. 4. The parties later got multiple extensions of the case schedule, which pushed out their deadline to complete discovery. In November 2020, as the parties were preparing again to begin depositions, Cloudflare served a deposition subpoena and a second subpoena for production of documents upon XMLShop. Mehta Decl. ¶ 5, Ex. 5. The subpoena directed production of specific categories of documents by November 23, 2020, before a Rule 30(b)(6) deposition of XMLShop that Cloudflare originally scheduled for December 10. Cloudflare restated the categories of documents listed in its March subpoena, given XMLShop's failure to produce any documents and the uncertain applicability of Rule 26(e)'s duty to supplement its subpoena response despite the intervening months. Plaintiffs' counsel, who is also counsel for XMLShop, accepted service of the subpoena on behalf of XMLShop on November 4, 2020. Mehta Decl. ¶ 6, Ex. 6. Once again, however, XMLShop produced no documents and untimely restated its blanket, boilerplate objections to all but one category of documents on November 23, 2020, after its 14-day period for serving objections had passed. *See* Mehta Decl. ¶ 7, Exs. 7-8.

On December 3, 2020, Cloudflare's counsel wrote to XMLShop, outlining the issues with XMLShop's refusal to produce documents and requesting a conference. Mehta Decl. ¶ 8, Ex. 9. Counsel conferred by telephone on December 15, during which Cloudflare's counsel explained

5

the relevance of each category listed in its subpoena and asked XMLShop, at a minimum, to disclose for each category whether it was withholding responsive documents based on objections or had no responsive documents to produce. Mehta Decl. ¶ 8. But—almost ten months after receiving the first document subpoena and weeks after the compliance deadline for the second—XMLShop had not yet even done a search for most of the requested categories, so the parties agreed to reconvene. *Id.* Later, on January 4, 2020, XMLShop sent supplemental responses through a letter from its counsel purporting to clarify whether XMLShop was withholding responsive documents or had no responsive documents to produce, and produced *one document*—an email exchange in which Mr. Ter-Saakov sent "an idea" to the witness Plaintiffs' disclosed as an expert in the litigation. Mehta Decl. ¶¶ 9-10, Exs. 10-11. Cloudflare sent two follow-up letters, but XMLShop still refuses to produce additional documents. Mehta Decl. ¶¶ 11-12, Exs. 12-13. It justifies its lack of production by: raising meritless objections to relevant and proportional documents; making implausible claims that it lacks any responsive documents, contrary to its own public statements and documents; and claiming, without support and without identifying them, that it already provided responsive documents *to Plaintiffs* to include in *their* productions in this case. None of these excuses justifies its failure to produce documents. Cloudflare tried to resolve this dispute without burdening the Court, but it now faces an April 16, 2021 deadline to complete fact depositions and still lacks basic information from XMLShop to prepare for depositions. Cloudflare accordingly seeks an order from the Court directing XMLShop to comply immediately with the subpoena.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Though not unbounded, the scope of discovery is broad." *HMV Indy, LLC v. Inovateus Solar,*

*LLC*, No. 2:20-MC-52-JDW, 2020 WL 3498259, at *2 (E.D. Pa. June 29, 2020) (citation omitted) (requiring compliance "in full" with subpoena to non-party identified in pleading and initial disclosures). The Federal Rules allow a party to serve a subpoena commanding someone to "to produce documents, electronically stored information, or tangible things . . . ." Fed. R. Civ. P. 45(a)(1)(C). If the subpoenaed person objects, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Along with compelling compliance, "[t]he court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

## ARGUMENT

The Court should enforce the subpoena to XMLShop by ordering it to provide a complete production of documents within fifteen days of the Court's order. Despite Cloudflare's efforts to secure compliance by conferring with XMLShop to address any concerns over the scope of the original requested categories of documents, five issues remain.[3] Each involves a discrete request for information for which XMLShop raises no cogent objection.

---

[3] Over the course of XMLShop and Cloudflare's discussions, XMLShop represented, through counsel, that it searched for, but has no, responsive documents concerning: communications with owners, operators, hosting providers, or with search engines regarding the accused websites (categories 15-17); claims, allegations, or litigation to which XMLShop or its personnel were involved (23, 31-33); XMLShop's advertisement or promotion of its services (24); Blair Hearnsberger (36); XMLShop's creation or use of false names or identities in connection with its investigations of infringement (37); and any registration of XMLShop to operate as a private investigator or to engage in private investigation for the past six years (50). On the basis of XMLShop's representations, Cloudflare does not address those categories in this motion.

1. **Identification of Employees Who May Be Witnesses**

Cloudflare seeks documents sufficient to identify XMLShop's employees with knowledge or information regarding XMLShop's enforcement activities and to provide their contact information. Mehta Decl. ¶ 5, Ex. 5 (Subpoena, Categories 1-4). XMLShop has not been forthright about its operations, leaving Cloudflare in the dark as to who else may be a witness with relevant knowledge. This request is not burdensome. XMLShop could produce a single document, such as an employee directory or payroll log, showing the individuals' names and roles. Its counsel claimed that a document is not necessary because "XML has only one employee" and "[t]he only persons involved with [its] investigations on behalf of Plaintiffs were Suren Ter-Saakov and Armen Petrossian," but counsel refused to provide their location or contact information for service. Mehta Decl. ¶ 9, Ex. 10. Even worse, XMLShop's own public statements contradict its counsel's statement. Its website boasts "a big team of professionals working in three offices, located in Ukraine, the United States, and Dominican Republic." Bridges Decl. ¶ 4, Ex. C; *see also id.*, Ex. A. And a LinkedIn profile for an individual named Blair Hearnsberger represents that she or he is the CEO at Counterfeit Technology (one of XMLShop's fictious business names). Bridges Decl. ¶ 5, Ex. D. XMLShop represents, through counsel, that the profile is fake and that Blair Hearnsberger does not actually exist (although, according to criminal court records, an individual by that name does exist). Bridges Decl. ¶ 6, Ex. E. Conflicting public information and statements in this litigation reaffirm Cloudflare's need for documentation verifying who works for XMLShop and in what roles, so that Cloudflare can seek deposition testimony from relevant witnesses.

Cloudflare also requires XMLShop's employees' locations because it has been unable to confirm any XMLShop employee's current presence in the United States, posing a potential challenge to securing testimony for the litigation. XMLShop apparently has substantial operations, and the overwhelming majority of its employees, in Ukraine. Some business listings identify

Ukraine as its principal location. Its XMLLogistics website identifies locations in Ukraine, the United States, and the Dominican Republic. *See* Bridges Decl. ¶ 4, Exs. A, C. If the key personnel are abroad, Cloudflare must take the time-intensive steps to secure admissible testimony in the other country for use in U.S. litigation. XMLShop's refusal to provide this employee and location information hampers Cloudflare's ability to obtain necessary further discovery. Even as to the two individuals its counsel identified— Mr. Ter-Saakov and Mr. Petrossian—Cloudflare asked XMLShop's counsel to (1) accept service of deposition subpoenas on their behalf and (2) confirm that each will be available and present in the United States for a remote deposition. Mehta Decl ¶ 12, Ex. 13. Counsel ultimately agreed to accept service on their behalf, but counsel still will not confirm that they will be present in the United States for deposition. Mehta Decl. ¶ 13, Ex. 14. Cloudflare thus asks the Court to compel XMLShop's response to document categories one through four of the subpoena.

   **2. XMLShop's Claimed Specialized Knowledge**

Cloudflare seeks documents sufficient to identify legal, scientific, technical, or other specialized knowledge, if any, of those at XMLShop working on Plaintiffs' behalf, with respect to copyright, trademark, counterfeiting, Internet matters, Section 512(a) and Section 512(b) of the Copyright Act, and Cloudflare's system and network. Mehta Decl. ¶ 5, Ex. 5 (Subpoena, Categories 5-11). XMLShop produced no documents responsive to these categories. This information is at least relevant to understanding the accuracy and precision in XMLShop's complaints to Cloudflare on Plaintiffs' behalf. XMLShop holds itself as having specialized knowledge about the allegations of specific instances of alleged copyright infringements that it submits to service providers, and (as Cloudflare showed above) it advertises that its technology files complaints of copyright infringement. Indeed, XMLShop's Counterfeit Technology website compares its services to that of a copyright lawyer. Bridges Decl. ¶ 3, Ex. B ("How long it really

9

takes" at http://counterfeit.technology/).  XMLShop assisted a witness whom Plaintiffs disclosed as a technical expert, discussing ideas for his report.  Mehta Decl. ¶ 10, Ex. 11.  XMLShop has also submitted declarations on Plaintiffs' behalf in other courts touting Mr. Ter-Saakov's background, professional work, "experience as CEO and Founder of Counterfeit Technology," and his statistic gathering and mathematical analysis.  Bridges Decl. ¶ 8, Ex. F (Declaration of Suren Ter-Saakov, *ABPIA v. Chen*, Case No. 16-cv-00023 (N.D. Ill. Jan. 4, 2016), Dkt. 13 ¶¶ 2, 5, 8).  The information sought is relevant to understanding the role XMLShop played in assisting Plaintiffs and also relevant to the reliability of its personnel and their actions that led up to the litigation and to their testimony in the case.  XMLShop tries to inflate the weight of its percipient testimony with the purported specialized knowledge of its employees, and Cloudflare should be able to examine and challenge that purported specialized knowledge.  XMLShop claims already to have provided its responsive documents to Plaintiffs for them to include in Plaintiffs' production, but XMLShop and its counsel have refused to identify those documents that Plaintiffs allegedly produced on XMLShop's behalf.  *See infra* section 5.

### 3. Internal Documents and Communications

Cloudflare seeks XMLShop's documents—including its communications (internally and with Plaintiffs) —about Cloudflare, the accused websites, the litigation, or XMLShop's work for Plaintiffs relating to the litigation.  Mehta Decl. ¶ 5, Ex. 5 (Subpoena, Categories 12, 14, 18, 20-22, 26-29, 40-47, 49).  This information is relevant, among other things, to understanding the extent and nature of XMLShop's work for Plaintiffs in their purported investigation of Cloudflare's technologies, in XMLShop's submission of complaints to Cloudflare on Plaintiffs' behalf, and in this litigation.  XMLShop contends that it has no responsive documents, or at least none beyond what it incorrectly claims Plaintiffs already produced.  That XMLShop has no such documents or communications is implausible, particularly because Cloudflare can see from the

single document that XMLShop produced that its representatives did communicate about this case over email. If XMLShop really searched its email and document systems and found no documents, it should explain the anomalous result that no documents exist. But it appears more likely that XMLShop is withholding documents without justification.

Similarly, Cloudflare also seeks XMLShop's communications with the American Bridal & Prom Industry Association ("ABPIA") or its representatives or officers. Mehta Decl. ¶ 5, Ex. 5 (Subpoena, Category 13). ABPIA is the trade association to which Plaintiffs belong, and it has facilitated or overseen their enforcement efforts. *See* FAC ¶¶ 19-20 (describing ABPIA's litigation efforts on behalf of Plaintiffs). XMLShop representatives have attested in earlier cases that the ABPIA engaged XMLShop on behalf of ABPIA members who were the plaintiffs in those cases, including other cases brought by Plaintiffs in this case. *See, e.g.*, Bridges Decl. ¶¶ 7, 9, Ex. G (at ¶ 1). And Plaintiff Mon Cheri Bridal's Chief Marketing Officer, Jon Liney, is a member of ABPIA's Board of Directors and has represented that he is "a leader" of ABPIA's investigations who "supervise[s] the work of ABPIA's technical team." *Compare* Mehta Decl. ¶ 3, Ex. 2 (initial disclosures), *with* Bridges Decl. ¶ 12, Ex. J (Declaration of Jon Liney, *ABPIA v. Jollyprom.com*, Case No. 17-cv-02454 (D.N.J. July 14, 2017), Dkt. 25-1). These communications are thus relevant for all the reasons described in the paragraph above, given the blurred lines between Plaintiffs and ABPIA as it relates to XMLShop's work on this case. Initially, XMLShop refused to respond based on its contention that this category "has nothing to do with any issues, facts, or claims in this case." Mehta Decl. ¶ 9, Ex. 10. It later represented that "[a]ny communications concerning Cloudflare or this litigation were with counsel and are therefore privileged." Mehta Decl. ¶ 13, Ex. 14. But it has provided no information for Cloudflare to assess that claim, and it has provided no privilege log. *See* Fed. R. Civ. P. 45(e)(2) ("A person withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe the

nature of the withheld documents . . . [to] enable the parties to assess the claim."). Cloudflare asks the Court to compel XMLShop's production of these relevant documents and require it to provide a privilege log so that Cloudflare may evaluate— and if necessary, challenge—its claim of privilege.

### 4. XMLShop's Purported Technology

Cloudflare seeks documents about software, technologies, or tools that XMLShop has used to identify what XMLShop claims to be copyright infringements. Mehta Decl. ¶ 5, Ex. 5 (Subpoena, Category 25). Plaintiffs represent that XMLShop uses "special bots designed to locate and identify the unauthorized use, reproduction, and display of Plaintiffs' copyrighted images." FAC ¶ 32. The information sought is relevant, for example, to understand the extent of XMLShop's investigation into the infringements it has complained about in complaints (which were under penalty of perjury) and the accuracy of its communications with Cloudflare about those allegations. XMLShop's Counterfeit Technology website suggests that it spends 10 seconds sending notifications of claimed infringement to all "traffic sources." Bridges Decl. ¶ 3, Ex. B ("How long it really takes" at http://counterfeit.technology/). Its use—and the reliability—of that technology is at least relevant to the predicate allegations of direct infringement it asserts. It is also relevant to Cloudflare's contention that it never received any notifications of claimed infringement from Counterfeit Technology that were valid for Cloudflare under 17 U.S.C. § 512(b)(2)(E)(ii).

XMLShop contends it "does not have any responsive documents." Mehta Decl. ¶ 9, Ex. 10. Again, this is not plausible. If XMLShop used such "special bots," FAC ¶ 32, and other technologies its personnel testified to in other cases, it should produce all documents constituting the relevant programs, evidencing their development, detailing their requirements, identifying their specifications, describing and promoting the technologies to actual and potential customers,

documenting their testing, justifying reliability of the technologies for evidentiary purposes, showing changes to the technologies over time, and explaining their use to persons responsible for using the technologies.

### 5. Documents that XMLShop Claims to Have Provided to Plaintiffs

Cloudflare seeks confirmation from XMLShop of what documents it claims to have provided to Plaintiffs for them to produce on its behalf in this case. After Cloudflare pressed XMLShop on why it failed to respond substantively to the subpoena, XMLShop represented it had provided certain responsive documents to Plaintiffs and it believed Plaintiffs had then produced them in the case. Cloudflare initially accepted that representation and asked XMLShop's counsel to provide the Bates ranges of those documents within Plaintiffs' production so that Cloudflare could determine which documents came from XMLShop. Mehta Decl. ¶ 11, Ex. 12. Counsel refused. The refusal is striking because the *same counsel represent both Plaintiffs and XMLShop*, and providing the information should have been easy—assuming XMLShop's representations were true and Plaintiffs actually produced its documents. Rule 45(e)(1)(A) requires that "[a] person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." This allows the serving party to understand what, if any, responsive information the subpoenaed party had, withheld, or provided in response to each requested category. Cloudflare asks XMLShop for even less burdensome information here. Cloudflare simply seeks identification of all documents that XMLShop claims to have provided to Plaintiffs for production, by Bates range in Plaintiffs' production. This will allow Cloudflare to question the appropriate custodian at deposition, as to substance and for authentication of the documents. If XMLShop contends that providing Bates numbers is too burdensome, then it should simply produce to Cloudflare a copy of the same set of documents it already sent to Plaintiffs.

### 6. **XMLShop's Extraordinary Actions Justify a Contempt Ruling**

Rule 45 permits the Court to hold XMLShop in contempt for its failure to obey the subpoena without adequate excuse. Fed. R. Civ. P. 45(g). The Court has discretion to do so. *Jones v. Thomas Jefferson Univ. Hosps., Inc.*, No. 13-4316, 2015 WL 1255997, at *1 (E.D. Pa. Mar. 19, 2015) (holding subpoenaed witness in contempt for failure to attend deposition and ordering monetary sanction). It should exercise that discretion here. XMLShop's boilerplate written "responses," which it served after Rule 45(d)(B)'s 14-day deadline, and production of a single document (after significant effort by Cloudflare) are not an adequate excuse. Despite its involvement, and assistance to Plaintiffs, in this lawsuit, XMLShop ignored its discovery obligations under the subpoena. Cloudflare asks the Court to hold XMLShop in contempt and also to hold it responsible for the costs and fees Cloudflare incurred in securing XMLShop's compliance with the subpoena. *See Endurance Am. Specialty Ins. Co. v. Hosp. Supportive Sys. LLC*, No. CV 17-3983, 2018 WL 3861808, at *2 (E.D. Pa. Aug. 14, 2018) (awarding fees for "unacceptable failure" of the plaintiff and subpoenaed non-party represented by same counsel to timely produce documents).

## CONCLUSION

XMLShop cannot reasonably object to the relevance of the requested information given Plaintiffs' own representations about XMLShop's involvement and the scope of XMLShop's knowledge as it relates to the litigation. Nor can it reasonably claim the burdens a more typical non-party may face in responding to a subpoena because it is involved in, and actively assisting Plaintiffs with, this litigation. Throughout the parties' discussions, XMLShop has argued that Cloudflare can simply explore these topics at a deposition of XMLShop and, if needed, demand a second deposition if it uncovers relevant documents that XMLShop failed to produce. This has no support in the Federal Rules. It unfairly limits Cloudflare's ability to prepare for and meaningfully

question witnesses at deposition. It is also inefficient and an unnecessary waste of resources. The outstanding requests are appropriately tailored and important to Cloudflare's defense. The Court should order XMLShop to comply with them immediately.

For these reasons, Cloudflare respectfully requests that the Court grant Cloudflare's Motion to Compel Compliance, order XMLShop to produce the subpoenaed documents, find it in contempt for failing to obey the subpoena without adequate excuse, and order it to pay Cloudflare's fees and costs in connection with this motion.

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated:  March 12, 2021

By: */s/ Alan C. Promer*
Alan C. Promer (Attorney I.D. No. 81006)
One Logan Square, 27th Floor
Philadelphia, PA  19103
Telephone:  (215) 496-7044
Email:  apromer@hangley.com

Andrew P. Bridges (*pro hac vice pending*)
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  (650) 988-8500
Facsimile:  (659) 938-5200
Email:  abridges@fenwick.com

*Attorneys for Defendant Cloudflare, Inc.*

## CERTIFICATE OF SERVICE

I, Alan C. Promer, hereby certify that on this 12th day of March, 2021, notice of the Motion of Defendant Cloudflare, Inc. to Compel Compliance by XMLShop, LLC dba Counterfeit Technology with Subpoena was provided to the commanded party by sending a true and correct copy of the foregoing by U.S. Mail to XMLShop dba Counterfeit Technology and its counsel, with a courtesy copy by electronic mail to counsel, at:

Robert B. Owens
Owens and Gach Ray
269 S. Beverly Drive, No. 1074
Beverly Hills, CA  90212


rowens@ogrlaw.com

*Attorneys for Plaintiffs and XMLShop, LLC dba Counterfeit Technology*

XMLShop, LLC dba Counterfeit Technology
8 Neshaminy Interplex, Suite 117
Trevose, PA 19053

Craig S. Hillard
Gene Markin
Stark and Stark, P.C.
993 Lenox Drive, Bldg. Two
Lawrenceville,  NJ  08648-2389

chilliard@stark-stark.com
gmarkin@stark-stark.com

*Attorneys for Plaintiffs and XMLShop, LLC dba Counterfeit Technology*


*/s/ Alan C. Promer*
Alan C. Promer